IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

DONAL R. EDWARDS,                    )
                                      )
      Plaintiff,                      )
                                      )
vs.                                   )        Civ. A. No. 22-00479-KD-MU
                                      )
SHERIFF HEATH JACKSON, *et al.,*      )
                                      )
      Defendants.                     )

## <u>REPORT AND RECOMMENDATION</u>

Plaintiff Donal R. Edwards, proceeding without a lawyer, filed his complaint under 42 U.S.C. § 1983, while incarcerated as a pretrial detainee at Escambia County Jail. (Doc. 15). Defendants filed their Special Report on September 21, 2023, along with supporting exhibits. (Docs. 56, 57, 67). The Special Report was converted to a motion for summary judgment, to which Plaintiff filed a response. (Docs. 64, 66). This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72(a)(2)(R) and is now before the undersigned on Defendants' Motion for Summary Judgment. (Doc. 65). After careful review of all pleadings, Defendants' special report, Plaintiff's response, and all exhibits filed by the parties, it is recommended that summary judgment be **GRANTED** in favor of Defendants Sheriff Heath Jackson, Warden Richard Hetrick, and Nurse Kristy Godwin and that all claims against these Defendants be **DISMISSED with prejudice**.

## I. __Background__

Plaintiff Donal R. Edwards ("Edwards") was booked into Escambia County Jail ("the jail") on May 13, 2021. (Doc. 67-3 at 23). On June 11, 2022,[1] he filed this action, alleging that he was denied proper medical treatment by Defendants Heath Jackson, Sheriff of Escambia County ("Jackson"), Richard Hetrick, former Warden for Escambia County Jail ("Hetrick"), and Kristy Godwin, former Nurse at Escambia County Jail ("Godwin") (collectively "Defendants") for 23 months while incarcerated at the jail. (Doc. 1 at 7). In his amended and operative complaint, Edwards alleges that Defendants denied him cancer treatment, including a full body PET scan to check for his metastatic neck cancer, which had been ordered by his physician at Baptist Medical Center prior to his arrest; that he was denied treatment for his chronic pain; and that he was denied seeing a psychiatrist for mental health treatment. (Doc. 15). Edwards requests monetary damages for Defendants' actions.[2] (*Id*. at 7). Based on Edwards's allegations, he is asserting a claim for deliberate indifference to serious medical needs.

---

[1] "Under the prison mailbox rule, a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014) (citation omitted). Absent evidence to the contrary, the Court must "assume that a prisoner delivered a filing to prison authorities on the date that he signed it." *Id.*

[2] In addition to monetary relief, Edwards also asks that the Court "clear [his] record of false charges." Such relief is not available through a § 1983 civil suit. Any challenge to the fact or duration of his confinement must be brought in a petition for habeas corpus. *Preiser v. Rodriguez*, 411 U.S. 475 (1973).

## II. <u>Standard of Review</u>

Summary judgment is proper if the party asking for summary judgment "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court does not "weigh the evidence and determine the truth of the matter" on summary judgment. *Id.* at 249. Rather, the Court "determine[s] whether there is a genuine issue for trial." *Id.* at 250.

Because Defendants seek summary judgment, they must demonstrate, by identifying evidence in the record, the absence of a genuine dispute of material fact or show that the nonmoving party, Plaintiff, does not have evidence in support of some element of his case on which he bears the ultimate burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). If Defendants carry their burden, then Plaintiff is required to "'go beyond the pleadings,' and by [his] own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995) (*per curiam*) (quoting *Celotex*, 477 U.S. at 324). "[I]f the record taken as a whole could lead a rational trier of fact to find for the nonmoving party," then a genuine issue of material fact exists. *Hickson Corp. v. Northern Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004).

In considering a motion for summary judgment, courts are required to "view the evidence, draw all reasonable factual inferences, and resolve all reasonable doubts in favor of the non-movant." *Baxter v. Roberts*, 54 F.4th 1241, 1253 (11th Cir. 2022)

(quoting *Stryker v. City of Homewood*, 978 F.3d 769, 773 (11th Cir. 2020)). This requirement extends only "to the extent supportable by the record." *Id*. (quoting *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007). Where "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380.

### III.  Summary of Material Facts[3]

Upon being booked into the jail in May of 2021, Edwards informed medical staff of his medical history, which included: neck cancer, arthritis, hypertension, chronic back, neck, and left shoulder pain, and anxiety. He also informed them that he was currently taking Lortab and Klonopen, which were filled at "Century Pharmacy, 256-3472." (Doc. 67-3 at 51). The following day, May 15, 2021, Edwards complained about anxiety, and he was placed on the list to see the psychiatrist. (*Id*. at 50). He also received Ibuprofen packets and Benadryl based on his symptoms and complaints of pain. (*Id*). And, the day after, Edwards again received Benadryl and an Ibuprofen packet. (*Id*.).

Thereafter, Edwards was seen on May 31, June 9, July 1, August 5, August 18, September 7, and October 20 of 2021 and March 9, April 20, April 30, May 22, May 25, June 18, July 21, July 27, September 7, October 19, and October 26 of 2022 by medical providers where he complained of neck, shoulder, and/or back pain. (*See* Doc. 67-3 at 27, 38, 43, 44, 46, 50, 53, 54, 56, 60, 61, 91; Doc. 50-1 at 80, 141; Doc. 57-5 at 17, 18).

---

[3] The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." *Priester v. City of Riveria Beach*, 208 F.3d 919, 925 n.3 (11th Cir. 2000).

At these appointments and for the duration of his confinement at the jail, Edwards was often prescribed a "K&D" injection, Flexeril, Cymbalta, Zanaflex, and Ibuprofen, 800mg.

On June 9, 2021, Edwards signed a medical records release. (Doc. 67-3 at 27). The jail/Sheriff's office requested from Baptist Medical Center "[a]ny records related to surgery on neck area for continuity of care. Along [with] any follow-up recommendations." *Id.*

On July 1, 2021, the jail received a copy of Edwards's records from Baptist Medical Center via facsimile. (*Id*. at 32 at 26-37, 62-73). The records reflect that Edwards was diagnosed with metastatic throat cancer by Dr. Botts in March of 2019. In July of 2019, he received chemotherapy and radiation treatments, and in October of 2019, he had surgery to remove a tumor from his neck. (Doc. 67-3 at 65; 67-4 at 28). The records reflect he experienced severe pain in his neck and that he "has a history of chronic pain from a previous car accident" (Doc. 67-4 at 28), for which he received pain management. (Doc. 67-3 at 67). After his cancer treatment in 2019, Edwards was prescribed, among other medications, Norco 10mg, every four hours, and Ibuprofen, 200mg three times a day, for treatment of pain, and clonazepam, 1mg, for anxiety. (*Id*. at 68, 70, 131-33). The record also reflects that Edwards had received these prescriptions prior to his cancer diagnosis. (*Id*. at 32, 131-33). Edwards was found to be free of cancer following the tumor removal but continued to complain of severe pain one week after surgery. (*Id*. at 64, 67, 69). For his cancer related pain, Dr. Botts prescribed Norco, 7.5-325mg, every four hours and Ibuprofen, 200mg, as needed with Norco. (*Id*. at 67- 69). For his chronic pain, Dr. Botts noted that Edwards "will be getting established with a new chronic pain management physician in 1 month." (*Id*. at 67, 69).

The Baptist Medical Center records also show that in March of 2020, Edwards was evaluated for complaints of severe ear and neck pain, where he stated he had been unable to see pain management because of financial difficulties. (Doc. 57-5 at 8). Dr. Botts reviewed Edwards's most recent CT scan of the neck and found vague soft tissue abnormalities within the left neck region but no reoccurrence of cancer. (*Id*. at 8). Dr. Botts "recommend[ed] a PET scan be performed to further evaluate the abnormality seen on CT scan of the neck." (*Id*. at 12; Doc. 67-3 at 72).

As to Edwards's complaints of pain, Dr. Botts informed Edwards that he could not legally prescribe him narcotics for pain. (Doc. 67-3 at 73). Edwards expressed suicidal ideation due to the chronic pain and inability to obtain medication. (*Id*.; at that time, his pain medication list included: Duloxetine, for mood and nerve pain, 60mg extended release; Hydrocodone-acetaminophen, 10mg-325mg, four times a day; Robaxin, 750, two tablets, three times a day for muscle pain and spasms; and Ibuprofen, 200 mg three times a day, as needed with Norco. *Id*. at 9). Edwards was referred to the emergency department for an evaluation to see if he met the criteria for a psychiatric hold and care. (*Id*.). He did not. It was determined that Edwards was clinically psychiatric stable and competent and that he reported being suicidal "to explain how much pain he was in," "to get them to understand how extreme the pain he was feeling and needing pain medication," and further reported that "he would never actually harm himself." (*Id*. at 124-130, quote at 130).

On July 1, 2021, Edwards was evaluated by the jail's psychiatrist, Dr. DeFrancisco, with chief complaints of pain and depression, with follow up visits on August 5, 2021, and February 3, 2022. (*Id*. at 39, 44-46). On July 12, 2021, Edwards

6

was seen by Nurse Godwin for cold symptoms but also demanded an x-ray be performed. Nurse Godwin noted that she would discuss it with the Director of Nursing. In a separate notation, Nurse Godwin charted that she would order a C-spine x-ray as ordered by Dr. Low. (Doc. 50-1 at 46).

On August 9, 2021, Edwards was evaluated for a "lump" that appeared on his back. Nurse Godwin noted that it appeared to be a cyst but referred Edwards to Dr. Low. (*Id*. at 46). Dr. Low examined Edwards on August 18, 2021, reviewed the x-ray results of the lump, and ordered a referral to an oncologist. She noted that Edwards has neck and back pain from a motor vehicle accident on a motorcycle and previous surgery for neck cancer with Dr. Botts. She increased his Cymbalta and Topamax prescriptions. (Doc. 67-3 at 43).

On August 30, 2021, Edwards's medical records were sent to an oncologist to schedule an appointment, but the oncologist communicated the next day that he did not treat inmates. (*Id*.).

On September 1, 2021, Edwards was caught hoarding a "copious amount" of Flexeril, Cymbalta, and Topamax, so Dr. Low discontinued these prescriptions. (*Id*. at 42). On September 6, 2021, Edwards sent an email to Godwin and medical personnel stating, "Funny how I had one more dose than u give and lose meds I been on for yrs still bs." (*Id*. at 24).

On September 7, 2021, Edwards's medical records were sent to USA Mitchell Cancer Institute, and Edwards was accepted as a patient on September 15, 2021. (*Id*. at 41). On October 20, 2021, Edwards was seen by Dr. Cameron at USA Mitchell

Cancer Institute.[4] (Doc. 57-6). He observed the "lump" to be consistent with a lipoma and performed lab work, finding no recurrence of cancer. Dr. Cameron opined that Edwards's neck pain was likely related to scar tissue. (*Id*. at 22, 77, 82-84).

On April 20, 2022, Dr. Cameron at USA Mitchell Cancer Institute ordered a CT scan to evaluate Edwards's neck pain, which was noted as a 10 on a scale of 1-10. (Doc. 57-5 at 17-18). The CT scan, performed May 4, 2022, reflected "postoperative changes in the head and neck" but no recurrence of cancer. (Doc. 67-3 at 91; *see also* Doc. 57-5 at 27). Lab work was also conducted. (Doc. 50-1 at 79). On May 25, 2022, Dr. Cameron at USA Mitchell Cancer Institute evaluated Edwards for complaints that the daily Ibuprofen provided at the jail was not relieving his pain, which was charted as an 8 on a 1-10 scale. (Doc. 67-3 at 87, 91). Dr. Cameron noted that chronic pain is "not uncommon in patients who have had concurrent chemoradiation and neck dissection" and further noted that the neck is "soft and very tender to touch." (Doc. 67-3 at 91). Dr. Cameron suggested Tramadol and Voltaren gel to the neck for pain, conducted lab work, and recommended a follow up in six months. (*Id*. at 87, 91). Dr. Cameron wrote Edwards a prescription for Ultram 50mg, twice a day, as needed. (Doc. 67-3 at 38).

On August 4, 2022, Edwards submitted a grievance to Warden Hetrick about being denied the prescription medication that was ordered by Dr. Cameron. (Doc. 67-3 at 147-48). On October 19, 2022, Edwards filed a grievance or sick call request to Godwin regarding severe neck, shoulder, and back pain and the denial of pain medication for which he was charged. (*Id*. at 54). Nurse Godwin placed Edwards on the

---

[4] Although Edwards claims that he was not evaluated by Dr. Cameron until 2022, *see* Docs. 52, 53, the certified medical records produced by Mitchell Cancer Institute belie this contention. (Doc. 57-6).

list to see Dr. Low on October 26, 2022. (*Id*.). Edwards also wrote to Warden Hetrick about not getting medication he was charged for and that other inmates were receiving. He further expressed the severe pain that he was in. (*Id*. at 151).

On November 14, 2022, Edwards filed a sick call to see Dr. Low for two more knots that had appeared on his back. Nurse Godwin replied to Edwards, "she is not gonna give you any more medication Donal. This pertains to your Back injuries. Degenerative disease process. Try and massage these areas with your hands." (*Id*. at 153).

While held at the jail, Edwards also received medical treatment as needed for complaints of cold symptoms, allergy symptoms, a tooth abscess, as well as extensive treatment following an inmate assault on June 27, 2022. (Doc. 67-3 at 38-41, 60-61, 94-113).

Edwards was transferred from the jail on April 13, 2023. (Doc. 67-3 at 157).

### IV. Legal Analysis

A prison official's failure to provide a pretrial detainee with medical care violates the Due Process Clause of the Fourteenth Amendment. *Nelson v. Tompkins*, 89 F.4th 1289, 1296 (11th Cir. 2024). The "minimum standard allowed by the due process clause is the same as that allowed by the eighth amendment for convicted persons." *Id.* (quoting *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1574 (11th Cir 1985). This standard requires a plaintiff to meet both an objective and subjective component. *Sims v. Mashburn*, 25 F.3d 980 (11th Cir. 1994).

To meet the objective element required to demonstrate a denial of medical care, a plaintiff first must demonstrate the existence of an "objectively serious medical need."

*Farrow v. West,* 320 F.3d 1235, 1243 (11th Cir. 2003).  A serious medical need is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  *Id.* (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.,* 40 F.3d 1176, 1187 (11th Cir. 1994), *overruled in part on other grounds by Hope v. Pelzer,* 536 U.S. 730, 739, (2002)). "In either of these situations, the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." *Id.* (internal quotation marks and citation omitted).

To meet the subjective requirement, a plaintiff must demonstrate "deliberate indifference" to a serious medical need. *Farrow*, 320 F.3d at 1243. To demonstrate deliberate indifference, the plaintiff must show that the defendant: (1) had subjective knowledge of a risk of serious harm, (2) disregarded that risk, and (3) acted with more than negligence. *Farmer*, 511 U.S. at 826*; see also Wade v. McDade,* 67 F.4th 1363, 1371–72 (11th Cir. 2023) (collecting cases discussing two different standards applied by the Eleventh Circuit - some panels have applied a "more than mere negligence" standard while others have applied a "more than gross negligence standard" which equates to a reckless disregard), *reh'g en banc granted, opinion vacated sub nom.* No. 21-14275, 2023 WL 6613842 (11th Cir. Oct. 11, 2023)).

With the constitutional standard laid out, the Court turns to Edwards's claims.

1. **Denial of Mental Health Treatment or Evaluation by a Psychiatrist**

Edwards alleges that he was denied evaluation and treatment by a psychiatrist for mental health while incarcerated in the jail. He claims that, when he did not receive proper cancer treatment and testing, it left him "not knowing if [he was] really ok or

about to die," which got him really "tripping!" (Doc. 15 at 3). He claims he asked for a "head doctor" but was told the jail "Don't GOT ONE!!!" and that he was denied treatment for a year. (*Id*.). The record belies this claim.

According to the sworn declaration of Nurse Kristy Godwin, the jail psychiatrist, Dr. Robert DeFrancisco, would see inmates once a month. (Doc. 57-3 at 2). Defendants have provided medical records which show that Edwards first complained about "anxiety" on May 15, 2021, and he was placed on the list to see the psychiatrist. (Doc. 67-3 at 50). The record reflects that Edwards was evaluated by Dr. DeFrancisco on July 1, 2021, with chief complaints of pain and depression and had follow up visits on August 5, 2021, and February 3, 2022. (Doc. 67-3 at 39, 44-46). Edwards has not disputed this. The record is also void of evidence that Edwards ever filed any requests for mental health treatment that were ignored. Nor has Edwards alleged or described any specific mental health issues that were told to Defendants and ignored or that worsened due to any delay in treatment. For these reasons, Edwards has failed to establish that Defendants were deliberately indifferent to his mental health needs. Accordingly, this claim is due to be dismissed from the action.

**2. <u>Denial of Appropriate Cancer Treatment and/or Care</u>**

Edwards also claims that Defendants were deliberately indifferent to his medical needs related to his cancer diagnosis. He alleges that Dr. Botts ordered a full-body MRI scan be done to check for a recurrence of cancer, but it was never done. (Doc. 15 at 2). He further alleges that he was denied evaluation by an oncologist for 10 months. (*Id*.).

To start, the record confirms that Edwards did not suffer from cancer at any time during his incarceration. (*See* Docs. 50-1 at 62, 100; 67-3 at 91), nor did Edwards have

a recurrence of cancer after his transfer from the jail. (See Doc. 151-1 at 177). Edwards

has not alleged that he has since developed cancer. Accordingly, Edwards has not

shown that he suffered from an objectively serious medical (cancer) need while in

Defendants' custody.

To the extent that the possibility of a recurrence of cancer constitutes a serious

medical need, Edwards has failed to show that Defendants acted wantonly, with

deliberate indifference to this need. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

There is no dispute that Edwards did not receive a full-body MRI scan. However, the

record clearly supports that Edwards received multiple evaluations by an oncologist, Dr.

Cameron, that the diagnostic tests recommended by Dr. Cameron were followed, that

Edwards was taken to all follow up visits ordered by Dr. Cameron, and that Edwards did

not have a reoccurrence of cancer while under the care of Dr. Cameron. Thus, Edwards

has not shown that the medical treatment he received was so grossly inadequate "as to

amount to no care at all."  *McElligott v. Foley*, 182 F.3d 1248, 1257 (11th Cir. 1999) ("A

core principle of Eighth Amendment jurisprudence in the area of medical care is that

prison officials with knowledge of the need for care may not, by failing to provide care,

delaying care, or providing grossly inadequate care, cause a prisoner to needlessly

suffer the pain resulting from his or her illness."); *see also Whitley v. Albers*, 475 U.S.

312, 319 (1986) ("It is obduracy and wantonness, not inadvertence or error in good

faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment

Clause."). The mere fact that Edwards disagrees with the efficacy of the treatment,

simply prefers a different course of treatment, or prefers a different medical practitioner

does not state a valid claim of medical mistreatment under the constitution. *See Adams*

*v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) (whether defendants "should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding" constitutional liability); *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (explaining that a difference in medical opinion between the prison's medical staff and the inmate about the inmate's course of treatment will not support a claim of cruel and unusual punishment). "When a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation." *Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989).

Accordingly, Edwards has failed to offer any evidence demonstrating that any Defendant acted with deliberate indifference in providing him cancer treatment while incarcerated, and this claim is due to be dismissed from the action.

### 3. Denial of Adequate Pain Medication

Finally, Edwards claims that he suffered "ungodly pain" in the jail because Defendants failed to adequately treat his pain and denied him pain medication that he had been on for years. (Doc. 15 at 5).

Courts have found "turning a blind eye to a prisoner's complaints of readily treatable pain can constitute an Eighth Amendment violation, even if the condition is not life–threatening and the failure to treat does not exacerbate the condition." *See, e.g., Diaz v. Godinez,* 693 F. App'x 440, 443 (7th Cir. 2017). When viewed in the light most favorable to Edwards, there is sufficient evidence which would allow a jury to find that Edwards suffered an objectively serious medical need, as Edwards has shown a history of receiving professional medical treatment for pain, which included prescriptions for

13

narcotic pain medication. The records from Baptist Medical Center confirm that he received such pain management from March 13, 2018 through March 2, 2020. (*See* Doc. 67-3 at 123-135). There are also indications in the record that he received pain medications prior to these dates due to a "history of chronic pain." (Doc. 50-1 at 65). Edwards has also provided a printout from Century Pharmacy that reflects he consistently (every month) received pain medication (hydrocodone and clonazepam) from the same provider from November 2020 through May 4, 2021 - right before he was arrested. (*See* Doc. 48). Records during his incarceration reveal that he was reporting significant pain levels to care providers. (*See supra* at pp. 4-9).

Having established that he had an objectively serious medical need in regard to his chronic pain, the Court must now determine whether he has shown that Defendants were deliberately indifferent to that need.

### Sheriff Jackson and Warden Hetrick

In his complaint, Edwards asserts only general allegations against Defendants Sheriff Jackson and Warden Hetrick for denying him cancer treatment, psychiatric treatment, and pain management. (Doc. 15 at 5). Sheriff Jackson and Warden Hetrick have submitted sworn declarations in support of summary judgment, which are summarized as follows:

Sheriff Jackson declares that he never had any personal interactions with Edwards nor was he involved in any medical decisions related to Edwards's medical treatment. Sheriff Jackson acknowledges being copied on an email or two from Edwards where he complained about his pain medication. Sheriff Jackson declares he and Warden Hetrick, however, were provided information and explanation that Edwards

was receiving the appropriate pain medication and cancer screenings as determined by his medical providers. (Doc. 67-2).

Warden Hetrick declares that he is not involved in providing medical care to inmates, but he has no reason to believe that Edwards was not receiving appropriate care by the jail's medical providers nor is he aware of any incident where medical personnel improperly treated Edwards. Warden Hetrick maintains that "[o]n an occasion or two [he] received an email from Inmate Edwards regarding his pain medication and medical treatment." (Doc. 67-1 at 3). In response to which, Hetrick declares he followed up with medical personnel and was provided sufficient information that Edwards was getting the appropriate treatment as prescribed by his treating physicians. (Doc. 67-1).

The record supports the declarations put forth by Sheriff Jackson and Warden Hetrick and, most importantly for purposes of evaluating this motion, Edwards has not disputed them. Defendants have further supported their position with email threads, which are detailed below (without alterations):

On August 4, 2022, Edwards emailed Warden Hetrick stating:

> Worden pls call me ur office need speak with u about kristy she just threaten me this morn I will be filling papper work on her she is not even a rn and shoud not even be doimg this job I will be writeing he feds on her I had enuf hr shit !!! (Doc. 67-3 at 146).

On the same day, Warden Hetrick responded to Edwards:

> What did she threaten you about and yes she is qualified to do this job. (*Id.*).

And, Warden Hetrick emailed Kristy Godwin:

> What's the deal with Edwards? (*Id.*).

On August 5, 2022, Edwards replied to Warden Hetrick:

> SR JUST ASK KRISTY ABOUTY MY MEDS THAT THE CANCER DR GAVE
> ME! SHE SAIED THER IS NONE SR MEG ALREADY TOLD ME THER IS SHE
> WAS IN PROSES OF GETTING THEM FILLED WHEN SHE LEFT! NOW
> KRISTY SAYING THIS! SHE IS LIEING!!! NOT ONLY THAT SHE HAS HAS
> DENIED ME MEDS THAT A TEAM OF BOARD SERDIFD SERGINS PUT ME
> ON 25 YRS AGO!!! BEEN IN MAGER PAIN WITH OUT MY MEDS HOW CHICK
> THAT U SAY I QAOULIFED THAT NOT EVEN RN GONNA OVER RULE TEAM
> BORD TEAM BORD SRETAFIDE SERGINS THAT ARE LICENES AND
> BONDED ??? NEED MY MEDS DON'T THINK FEDS WILL AGREE (*Id*. at 147).

On that same date, Warden Hetrick emailed Kristy Godwin:

> What is he talking about (*Id*.).

On August 6, 2022. Kristy Godwin replies:

> Donal Edwards has lost his mind. He was put on Tramadol for 15 days and that's
> all. He thinks there is another prescription in his chart but there is not one there.
> so he thinks I'm lying to him. He is drug seeking (*Id*. at 148).

On August 7, 2022, Warden Hetrick responds to Kristy Godwin:

> Keep everything documented because his family is supposedly filing a complaint
> based on what he's telling them. As long as you following the doctors orders you
> are fine (*Id*.).

On October 19, 2022, Edwards emailed Warden Hetrick:

> Sr got another problem need u look in to pls Sr I saw Dr few week ago and was
> wrote some meds that I was charged for that I am not getimhg kristy said no one
> is but other folds in dorm get thers? also not only do I not get the meds I was
> wrote I don't even get the meds I was already on ??? leaving me in saver pain
> more than I already am Sr! been off my pain meds almost 2 yrs now Sr left in
> saver pain ts been very mental thing now even been cut off that ! pls see if y can
> cheeck on this pls Sr thanks Chief (Doc. 67-3 at 151).

On that same day, Warden Hetrick emailed Kristy Godwin (forwarding Edwards's
email):

> Can you give me any insight to this? (*Id*.).

And, Kristy Godwin responded to Warden Hetrick:

> He has been wanting to see Dr. Low for more meds. that I told him she was not
> gonna give him. But I'm gonna let him see her next week. He is talking about

Zanaflex 6mg. The pharmacy took everybody off of this. It would not send it to nobody so nobody else in there has it. (*Id*.).

"It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted). If a supervisor's liability cannot be established based on the supervisor's personal participation in the complained of acts, a plaintiff must show a "causal connection" between the supervisor's actions and the alleged constitutional deprivation. *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990). A causal connection can be established by showing "1) a 'history of widespread abuse' puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so; 2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or 3) facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so. *Valdes v. Crosby*, 450 F.3d 1231, 1237 (11th Cir. 2006) (citing *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003)).

Edwards has failed to allege any facts indicating Defendants Jackson and Hetrick were *personally* involved in denying him medical care, including pain medication. Neither has he plead a history, custom, or policy of the denial of medical care and/or pain medication at the jail. The closest Edwards gets to touching on liability for these Defendants is the fact that he alerted Warden Hetrick, by email, that he was being denied pain medication by Kristy Godwin. However, the email threads reflect that Warden Hetrick immediately acted by reaching out to Nurse Godwin and inquiring about the situations stated in Edwards's grievances. The response he received from Nurse

17

Godwin explained why Edwards was not receiving the pain medication he demanded. Warden Hetrick's reliance on Nurse Godwin's response and explanation was reasonable under the circumstances. Accordingly, he cannot be found liable for deliberate indifference. *Farmer*, 511 U.S. at 826 ("But prison officials may not be held liable if they prove that they were unaware of even an obvious risk or if they responded reasonably to a known risk, even if the harm ultimately was not averted.").

For these reasons, Edwards has failed to establish that Sheriff Jackson and Warden Hetrick were deliberately indifferent to his medical needs, including pain medication, while he was incarcerated at the jail, and Defendants Jackson and Hetrick are due to be dismissed from this action.

### Nurse Kristy Godwin

Edwards accuses Nurse Godwin of "medical neglect in the highest to the point of attempted murder!!!" (Doc. 15 at 6). Nurse Godwin denies the allegation. In support of summary judgment, Godwin has submitted a sworn declaration, which is summarized below:

Kristy Godwin, a licensed practical nurse, who served as a nurse at the Escambia County Jail, declares that nurses provide medication to inmates at the jail consistent with the orders of doctors, which includes standing orders for pain relief and other specific prescriptions that would be ordered for different inmates based on their need by the jail's doctor, as well as medication consistent with orders received from any specialist treating an inmate. Godwin specifically declares:

> Inmate Edwards displayed drug seeking behavior and constantly complained that he wanted stronger pain medication. I did not see any clinical indications that Edwards needed stronger pain medication besides the pain medication that [the jail's doctor,] Dr. Low[,] prescribed for his

18

chronic pain, which included Flexeril and Cymbalta. Inmate Edwards did not appear to have any issues walking or moving and was involved in at least two altercations while he was at the jail.

(Doc. 57-3 at 3).

Godwin declares that Edwards was once caught hoarding pain medication so that he could improperly take it all at once. This incident is also recorded in the jail records. (Doc. 57-4 at 41). Godwin also declares Edwards often appeared to be in an altered state when she interacted with him and that he "often had a bad attitude and would curse at the nurses in the nurse's station." (Doc. 57-3 at 4). Specific to pain medication, Godwin declares Edwards received all pain medication prescribed by physicians, Dr. Low, Dr. Cameron, and Dr. DeFrancisco, while detained at the jail. She stated that she provided Edwards over the counter pain medications like Tylenol and Ibuprofen, but she was not approved to give other pain medications without approval of a physician. She declares she never failed or refused to give any prescribed medications to Edwards.

In May of 2022, Dr. Cameron wrote a single prescription for Edwards for Ultram (or Tramadol) and Edwards was given the prescription until it ran out. Godwin states that Edwards believed he had another prescription, which led him to email a complaint to Warden Hetrick. In October 2022, Edwards emailed a request for more pain medication and Godwin informed Edwards that Dr. Low would not prescribe more pain medication because she "believed that Dr. Low would conclude, as [she] had that more pain medicine did not seem clinically necessary." (*Id*. at 5). On November 14, 2022, Edwards emailed with complaints about knots in his back, and Godwin responded that the knots were due to his degenerative back issues and recommended massaging the

areas. Godwin declares she never breached the applicable standard of care regarding the medical treatment provided to Edwards while he was detained at the jail. (Doc. 57-3).

The Court begins its analysis with the general rule that an inmate's disagreement regarding the propriety of his medical treatment by medical providers is not actionable under § 1983. (Doc. 58 at 14, *citing Harris v. Thigpen,* 941 F.2d 1495, 1505 (11th Cir. 1991); *see also, e.g.*, *Ross v. Corizon Med. Servs.*, 700 F. App'x 914, 916 (11th Cir. 2017) ("The failure to administer stronger medication is generally a medical judgment that is not an appropriate basis for imposing liability."). For treatment or a lack of treatment to amount to deliberate indifference, this Circuit requires a showing that the care was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Thigpen*, 941 F.2d at 1505. This showing could be met by evidence of "a decision to take an easier but less efficacious course of treatment" or by showing "care which is so cursory as to amount to no treatment at all." *Hammonds v. Theakston*, 833 F. App'x 295, 300 (11th Cir. 2020) (internal citations and quotations omitted). "[D]eliberate indifference is a stringent standard of fault, requiring proof that [the] actor disregarded a known or obvious consequence of his action." *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997).

Here, the record confirms that Godwin had knowledge of Edwards's pain. Edwards informed medical personnel upon entering the jail that he had a history of chronic pain, that he was currently taking hydrocodone and clonazepam, and that the prescriptions were filled at Century Pharmacy. Even though Edwards had been prescribed pain medication at the time he was arrested and booked into the jail and had

been consistently prescribed the same pain medications for several months before
entering the jail, *see* Doc. 48, there is no indication that Godwin or any medical
personnel attempted to confirm whether Edwards had current pain prescriptions at
Century Pharmacy. Edwards was, however given Ibuprofen, 800mg, consistently for his
pain and other pain medications as prescribed by physicians he saw while incarcerated.
Additionally, the record confirms through Godwin's November 14, 2022, email that she
was specifically aware that Edwards suffered from "back injuries" (that included a
"degenerative disease progress") and that she informed him, without speaking to the
doctor, that Dr. Low would not give him any more medication, and she recommended
massaging the areas. (Doc. 67-3 at 153). There is also evidence in the record that
Edwards was caught on one occasion "hoarding" medication. Although according to
Edwards, and supported by jail records, he was taken off his prescribed medications
upon entering the jail, Godwin has declared that Edwards received all pain medication
prescribed by physicians once he was incarcerated.

It is well-established in the Eleventh Circuit that "mere medical malpractice or a
difference in medical opinion as to treatment or diagnosis does not constitute deliberate
indifference." *Brennan v. Headley,* 807 F. App'x 927, 935 (11th Cir. 2020) (citing
*Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)). "When a prisoner has
received medical attention, courts are reluctant to second-guess medical judgments
even if there is a dispute over the adequacy of the treatment." *Id.* (citing *Thigpen*, 941
F.2d at 1507. Like the nurse in *Brennan*, Godwin lacked the power to prescribe narcotic
pain relievers or to tell doctors how to treat or what to prescribe Edwards. *See id.* at

938. Edwards simply has not presented evidence establishing that Godwin was deliberately indifferent to his complaints of pain.

Accordingly, summary judgment is due to be granted in favor of Defendant Kristy Godwin as to the claim of denial of adequate treatment for pain.

### 4. Immunity Defenses

Sheriff Jackson and Warden Hetrick have asserted immunity defenses. (Doc. 58 at 14-15). To the extent Sheriff Jackson and Warden Hetrick are being sued in their official capacities, as a county sheriff and deputy, they are considered employees of the State and are immune from suit pursuant to the Eleventh Amendment, which bars "suits against a state brought in federal court by citizens of that state." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998); *Haywood v. Alexander*, 121 So. 3d 972, 978 (Ala. 2013) (county sheriffs and their deputies are employees of the State).

As to the claims asserted against Defendants Jackson, Hetrick, and Godwin in their individual capacities, Defendants have asserted a qualified immunity defense. (Doc. 58 at 24-25). To overcome this defense, a plaintiff must establish: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Because Edwards has failed to establish a constitutional violation against these Defendants, they are entitled to qualified immunity.

## V. Conclusion

Based on the foregoing, it is recommended that Defendants' Motion for Summary Judgment (Doc. 65) be **GRANTED** in favor of Defendants Sheriff Heath Jackson,

Warden Richard Hetrick, and Nurse Kristy Godwin and that Plaintiff's action against these Defendants be **DISMISSED with prejudice**.

<u>**NOTICE OF RIGHT TO FILE OBJECTIONS**</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. L.R. 72(c).  The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."  11th Cir. R. 3-1.  To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the **21st** day of **March, 2024**.

s/P. BRADLEY MURRAY
**UNITED STATES MAGISTRATE JUDGE**

23